**COMFORT v. MONTELEONE et al.** *
No. 16004.

Court of Appeal of Louisiana.   Orleans.
Oct. 21, 1935.

*Rehearing denied Dec. 16, 1935.

M'Caleb & M'Caleb, of New Orleans, for appellants.

A. G. Williams, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff seeks recovery for physical injuries and for shame and humiliation alleged to have been sustained by him as the result of unprovoked assault, malicious prosecution, and false imprisonment, all of which he charges were committed by a house detective, or watchman, in the employ of the owners or operators of the Monteleone Hotel in this city. It is asserted that on May 25, 1932, while petitioner was seated quietly in the lobby of the hotel and was conducting himself in a lawful and proper manner, "he was assaulted, beaten and forcibly ejected from said hotel" by the said employee.

It is also charged that the employee, after the assault, summoned a police officer and delivered petitioner into the custody of the said officer, and that he then accompanied petitioner and the officer to a police station in this city and then to a recorder's court, where he charged petitioner with disturbing the peace. It is charged, also, that the said employee later gave evidence on which petitioner was convicted on the said charge.

Petitioner appealed from the said conviction, and it is admitted that on appeal the sentence was affirmed.

It is asserted that the arrest and the ensuing criminal charge were not made in good faith, and that the said employee acted with malice and without probable cause, but that the said employee was acting within the scope of his employment and that the owners and operators of the said hotel are, consequently, liable for such damage as was sustained.

The defendants against whom judgment is sought are Frank J. and Anthony V. Monteleone and Mrs. Stella Monteleone Kenney, wife of James D. Kenney, also James D. Kenney, executor of the estate of A. Monteleone, and Monteleone Investments, Inc.

Defendant Monteleone Investments, Inc., denied that it owned or operated the said hotel and, in effect, denied all the remaining allegations. Likewise defendant Kenney, executor of the estate of A. Monteleone, denied that the estate of Monteleone was owner or operator of the said hotel, and in fact averred that the said estate had been closed and the executor discharged. The remaining defendants, the heirs of A. Monteleone, admitted themselves to be the owners, proprietors, and operators of the said hotel, and also admitted themselves to be the operators of the annex of the hotel, but denied any liability to plaintiff, contending, in the first place, that he had been ejected from the premises for cause—that at the time he was intoxicated and had made himself objectionable—and in the second place that, in ejecting plaintiff, the said employee was not acting within the scope of his employment.

In the district court there was judgment for $500 against all of the defendants jointly and severally, and they have all appealed.

It is now conceded that neither the estate of Monteleone, nor Monteleone Investments, Inc., is in any way connected with the ownership or operation of the hotel. Consequently, the judgment against those defendants must be reversed, so that we shall consider only the question of whether the judgment against the other defendants—the heirs of A. Monteleone—is proper.

At the outset we notice that, though plaintiff seeks recovery for the injury he claims to have sustained as the result of the arrest and criminal prosecution which he contends were malicious and not justified, he was convicted on the charge, and we also notice that the said conviction was affirmed on appeal.

We shall first consider whether the acts of the employee were committed within the scope of his employment, and we note that the mere fact that such acts are committed during the course of employment is not sufficient to warrant a holding that they were committed within the scope of the employment. In Godchaux v. Texas & Pacific Ry. Co. et al., 144 La. 1041, 81 So. 706, 707, the Supreme Court said: "The responsibility of the master for a tort committed by his servant does not depend upon whether the tort was committed in the course of the employment; the test is whether the tort was committed within the scope of the employment."

The master is not liable for all damage which the employees may do during working hours, but only for the results of those acts done "in the exercise of the functions in which they are employed." Rev. Civ. Code, art. 2320, and arts. 2315,

2317. This does not mean that the master is liable only when the servant is performing some act which it is contemplated by the master that he will perform, but it means that if, in the exercise of contemplated functions, the servant acts improperly or uses excessive force and damage results, the master must compensate for such damage.

█ If an employee whose duties are limited to peaceful functions undertakes to perform others of a different character and damage results to some one else, the master is not responsible, but, on the other hand, the master is liable if, in the discharge of functions for which he was employed, the employee acts carelessly, or exceeds the contemplated limits of his authority. Vincent et ux. v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541; Gann v. Great Southern Lumber Co. et al., 131 La. 400, 59 So. 830.

A still different situation is presented when an employee, whose duties contemplate that he will be required to do a certain thing, such as to eject for misbehavior a person who might otherwise be rightfully on the premises, ejects such a person, not for misbehavior, but because of a personal altercation. That seems to have been what took place here. According to the overwhelming preponderance of evidence, plaintiff was not misbehaving at the time he was struck and ejected by the house officer, and also, according to the great preponderance of evidence, plaintiff had, in the presence of others, on several occasions, charged the house officer with robbing a slot machine located in the lobby of the hotel.

There is no doubt in our minds, and, according to his reasons for judgment, there was no doubt in the mind of the district judge, that there was no cause for the assault, nor for the subsequent proceedings, and that they were not warranted by any act on the part of plaintiff committed at that time. But it is evident that the said house officer was incensed by the charges plaintiff had made against him concerning his alleged robbery of the slot machine. In the absence of any other cause, it is reasonable to accept as the true reason for the assault that given by plaintiff himself and repeated by him several times and testified to also by his witnesses: That the house officer struck him and ejected him because of his remarks, such as: "Look at that fellow stealing those prizes," and "That is fine, robbing the machine again," etc.

It thus appears from the evidence tendered on behalf of plaintiff that the house officer, in ejecting him, was prompted by personal motives and not by any desire to further the interests of his employers.

This fact presents a most interesting question, because there can be no doubt that the employee was, by the nature of his employment, vested with authority to eject from the premises any one who might misbehave or make himself objectionable. If, then, the employee had ejected plaintiff under the belief that there had been misbehavior on his part, the operators of the hotel would have been liable for any excessive force or for any tortious act on his part.

But here the employee plainly was acting solely in the venting of his own personal spite. The rule of law applicable to such situation is set forth in Corpus Juris, vol. 39, "Master and Servant," on page 1307, § 1506, in which is found the following: " * * * If the assault was committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify personal animosity, or to carry out an independent purpose of his own, then the master is not liable."

In Godchaux v. Texas & Pac. Ry. Co. et al., supra, is found a case much resembling this in the particular now under discussion. There a consignee of freight had called at the depot of a railroad company to secure a shipment. The station agent delayed slightly the delivery of the shipment, whereupon plaintiff, the consignee, made remarks which the station agent resented. The station agent then cursed plaintiff, "knocked him down * * * and beat and kicked him until he was near senseless." In an action for damages, the Supreme Court held that there was no liability because of the fact that the assault was not committed by the servant while acting within the scope of his employment.

It is true that in that case the court said that, "if it had been within the scope of the agent's authority or employment to eject a disturber from the employer's premises," the employer might have been liable. But a reading of the case in full leads to the view that the real reason for the conclusion reached was the fact that, in assault-

ing the plaintiff, the employee, in acting on a personal motive and to vent his own pent-up animosity, did not act within the scope of his employment. As a matter of fact, a station agent in a small country station is, and must be, vested with a certain amount of authority to police the premises of his employer, and surely a station agent must be considered as having authority to eject from the premises any one who misbehaves or commits other nuisance.

In the case at bar, the employee, of course, was vested with authority to eject a disturber from the employer's premises, but in doing so his authority was limited to such cases as might be made necessary by improper acts on the part of plaintiff. An employee is never vested with authority to exercise force in the venting of personal animosity.

Nor do we think that Chaney v. Frigidaire Corporation (C. C. A.) 31 F.(2d) 977, 978, is authority for a contrary view. In that case is found the following: "It appears to be well settled in Louisiana that, while the master may be liable for the willful torts of his servant, 'the test of the master's responsibility, * * * is not the motive of the servant, but whether that which he did was something his employment contemplated, and something which, if he should do it lawfully, he might do in his employer's name.' Williams v. Pullman Palace Car Co., 40 La. Ann. 87, 3 So. 631, 8 Am. St. Rep. 512."

An analysis of that decision leads to the conclusion that what is meant is that a master cannot be made liable by the motive of an employee. If an employee, believing it to be his duty to do a certain thing, does so and damage results, and it later appears that the act was, in fact, not within the scope of the servant's employment, the master is not made liable by reason of the fact that the servant believed himself to be acting in his line of duty. The converse cannot hold true. If a servant with authority to police his master's premises and to eject objectionable characters has a personal enemy, and he and his personal enemy engage in a private altercation, surely the master is not made liable for the result by the fact that the employee's duty contemplated that on proper occasion he should eject objectionable characters.

Nor is there any general duty imposed by law upon a hotel proprietor to afford complete protection to a licensee. If a third person on the premises should injure such licensee, the hotel proprietor would not be liable, because to hold him liable would be to hold him as the insurer of the safety of all persons lawfully on the premises. Possibly the master might be held liable for such an assault if it could be shown that he was careless in selecting a negligent or belligerent employee. But there is no such charge here.

We well realize the danger which exists in permitting an employer to escape the legal consequences of the wrongful act of an employee by showing that the motive for the wrongful act had no connection with the employment. We know that the strongest proof as to the cause of or motive for such act should be required. But we point here to the fact that such motive is testified to out of the mouth of plaintiff himself. He insists, and persists in stating, that the sole and only cause was the personal animosity of the employee. In so doing he has defeated his own case.

We realize that the employee denies that he was actuated by such motive, and we have the strange situation that plaintiff's case is defeated if we accept his testimony, and, on the other hand, the defense must fail if we accept the testimony of the principal witnesses for defendants.

But, whatever the contentions of the parties may be, the record does convince us that, as we have said, plaintiff was not at fault in so far as his conduct at that time was concerned, and that the sole cause of the controversy was the personal animosity which the said employee had towards him as a result of past personal altercations.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that plaintiff's suit be dismissed at his cost.

Reversed.