248 So.2d 901 (1971)
E. J. BOURQUE, Plaintiff-Appellant,
v.
Bobby LOHR et al., Defendants-Appellees.
No. 3382.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1971.
Dissenting Opinion May 31, 1971.
Rehearing Denied June 25, 1971.
*902 McBride & Brewster, by Robert R. McBride, Lafayette, for plaintiff-appellant.
Milton LeBlanc, Jr., Caffery, Duhe & Davis, by W. Eugene Davis and L. Albert Forrest, New Iberia, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER Judge.
Plaintiff, E. J. Bourque, instituted this suit for damages for personal injuries sustained by him as the result of a battery allegedly committed on him by officers Bobby Lohr and Francis Viator of the New Iberia City Police Force. The defendants are Lohr, Viator and The Travelers Indemnity Company, the city's liability insurer. A third party demand was filed by Travelers against the other two defendants. Judgment was rendered by the trial court in favor of plaintiff and against Lohr, but rejecting plaintiff's demands against Viator and Travelers, and dismissing Travelers' third party demands. Plaintiff has appealed.
Since defendant Lohr has neither appealed nor answered the appeal, the judgment of the district court is final insofar as it decrees liability on his part.
The issues presented are, first, whether Viator and Travelers are also liable to plaintiff for the damages he sustained, and second, whether the award made by the trial court is adequate.
Officers Lohr and Viator had been assigned to perform patrol duty from 9:00 p. *903 m. on February 21 to 5:00 a. m. on February 22, 1964. While on duty, they overheard a police radio transmission advising that a fight had occurred at Fred's Lounge, in New Iberia, between plaintiff Bourque and Lloyd Lohr, the younger brother of defendant, Bobby Lohr.
At or shortly before 5:00 a. m. on February 22, the two policemen returned to the police station, logged in as having completed their assigned tour of duty, and then left the station in Lohr's personal car for the avowed purpose of returning to their respective homes. Both of them were still in uniform and were wearing side arms as they left the police station.
While en route to their homes, Lohr stopped his car at Fred's Lounge and entered the barroom, where he found his younger brother engaged in a card game with plaintiff Bourque and others. Viator remained in the automobile for three or four minutes after Lohr entered the building, and he then left the car and also went into the barroom. While inside, defendant Lohr inquired about the fight, and was informed by his brother that it was over, that he and plaintiff had settled their differences and that they now were friends. As Lohr was about to leave, however, plaintiff made a remark which Lohr interpreted as being insulting to him, so he informed plaintiff that he was under arrest. Plaintiff then peaceably got into the back seat of Lohr's automobile, with Lohr and Viator occupying the front seat, and Lohr began driving his car toward the city jail.
When they reached a point about five blocks from Fred's Lounge, Lohr stopped his car, ordered plaintiff out of it, and he and plaintiff then became engaged in a fight on the street, immediately behind the automobile. Plaintiff was injured in that fight, and it is for those injuries that he now seeks to recover damages. Immediately after the fight ended, plaintiff was ordered back into the car and he then was taken to his home. He was never taken to jail, and no charges were preferred against him arising out of any of the above mentioned incidents.
Plaintiff argues that the trial judge erred in finding that defendant Viator was free from fault. He contends that Viator participated in the fight by striking plaintiff on the back of the head while plaintiff was involved in the above described altercation with Lohr. He also contends that even if Viator did not actually strike him, Viator nevertheless is liable for damages because of his failure to protect Bourque or to intervene in his behalf while the injuries were being inflicted by Lohr.
Bourque testified that he saw Viator get out of the car and walk toward the back of it while Lohr was hitting plaintiff, and that he "felt" Viator strike him in the back of the head while plaintiff was using his hands to protect his face from the blows being struck by Lohr. Plaintiff concedes, however, that he did not see Viator swing at him or make an aggressive move in his direction.
Viator testified that he remained in the automobile after Bourque and Lohr got out of it immediately before the fight began, and that shortly after the other occupants got out he looked through the rear window of the car and saw "fists flying." He stated that he thereupon got out of the car, went to the back of it and upon his arrival there he found plaintiff lying on the ground. He insists that he did not strike plaintiff in "no kind of way." Lohr's testimony supports Viator's statement that plaintiff was on the ground when Viator arrived at the scene of the fight. The evidence shows that the altercation between plaintiff and Lohr did not last more than 30 seconds.
The trial judge found that Viator took no part in the arrest of plaintiff, that he did not participate in the fight which occurred after the parties left Fred's Lounge and that he did not strike plaintiff at any time. In his reasons for judgment the court said, "* * * the record is completely void of any evidence which would *904 indicate that "Officer Viator participated in any way or that he conspired or encouraged the fistic encounter between John Lohr and E. J. Bourque. And, therefore, under no theory can Mr. Viator be held responsible for the incident or the damages which Mr. Bourque has allegedly sustained."
The record supports these findings of the trial judge. Furthermore, Viator did not have an opportunity to intervene or to protect Bourque at any time before the injuries were inflicted upon him. We thus find no error in that part of the judgment appealed from which decrees that defendant Viator is not liable to plaintiff for any of the damages which he claims in this suit.
The next issue is whether the city's insurer is liable. Our jurisprudence is settled that the employer of a police officer is liable for wrongful injury inflicted while performing his official duties, Taylor v. City of Baton Rouge, 233 So.2d 325 (La. App. 1st Cir. 1970) writ of certiorari refused; Robertson v. Palmer, 55 So.2d 68 (La.App. 1st Cir. 1952) writ of certiorari refused; Britt v. Merritt, 219 La. 333, 53 So.2d 121 (1951); Sanders v. Humphries, 143 La. 43, 78 So. 168; Gray v. De Bretton, 184 So. 390 (La.App. 1st Cir. 1938). In the present case, the defendant insurer is liable if Officer Lohr was discharging the duties of his employment at the time the wrongful injury was inflicted.
As stated above, the facts are that Officer Lohr had placed plaintiff under arrest and was taking him to jail at the time of the incident in question. Plaintiff understood that he was under arrest and submitted peacefully.
There is a conflict in the testimony as to exactly what happened on the way to the jail. Officer Lohr says plaintiff became belligerent so he stopped the car to put handcuffs on him. Plaintiff says he was quiet and said absolutely nothing. Viator testified there was a "loud conversation." In any event, Officer Lohr suddenly stopped the car and ordered plaintiff out. Lohr says the plaintiff came out swinging and the fight ensued. Officer Viator testified he saw no blows struck until the fight started behind the car. Both officers admit that no attempt was ever made to put handcuffs on the plaintiff. After a severe beating, plaintiff was not taken to jail. Instead, he was taken to his home.
Under these facts, it is clear that the wrongful injuries were inflicted while Officer Lohr was performing his duties as a city policeman. He had the authority and the duty to arrest plaintiff for an offense committed in his presence, Code of Criminal Procedure, Art. 213. The prisoner was in his custody and was being taken to jail at the time of the battery.
In finding that Officer Lohr was not performing his official duty, the trial judge first stressed the fact that it was not during Lohr's regular hours of duty. We cannot agree that this is a substantial factor in the present case. Under Code of Criminal Procedure, Art. 213 a peace officer can make an arrest without a warrant for an "offense" committed in his presence. We find no statutory or jurisprudential rule that the officer must be on regular hours of duty. It would be a serious handicap to law enforcement to adopt a rule that an arrest is unauthorized if the officer is not on his regular duty shift. In this case, the officer was in full uniform, with side arms, and had both the apparent and actual authority to make the arrest and take plaintiff into custody.
The trial judge next stresses the fact that Officer Lohr had not been called or instructed to investigate any incident at Fred's Lounge. We think this is immaterial. An officer has not only the right but the duty to make arrests for offenses committed in his presence, regardless of whether he has been called or instructed to investigate that particular matter.
Additionally, the trial court expressed the opinion that Officer Lohr "stopped at *905 Fred's Lounge for the specific purpose as heretofore determined of taking revenge upon the plaintiff for the earlier beating administered to his younger brother; a reason purely personal to him." The district court then cited several cases for the proposition that an employer is not responsible for the intentional torts of his employee, committed purely for personal reasons and not for the purpose of carrying out the duties of his employment.
For instance, in Comfort v. Monteleone Hotel, 163 So. 670 (La.App.Orl.1935) a hotel detective, while on the hotel premises, struck and beat the plaintiff, with whom he had previous difficulties. The facts showed that the detective was not trying to eject plaintiff from the hotel or prevent him from committing any objectionable conduct. Instead, he administered the beating for purely personal reasons. The court found the detective was not engaged in carrying out the duties of his employment and hence the hotel was not liable. See also Godchaux v. Texas & Pacific Railway Company, 144 La. 1041, 81 So. 706 (1919); Bradley v. Humble Oil & Refining Company, 163 So.2d 180 (La.App. 4th Cir. 1964); Robertson v. Palmer, 55 So.2d 68 (La.App. 1st Cir. 1952).
The cited cases are distinguished. In none of those cases did the officer, detective or other employee inflict wrongful injuries on the plaintiff after arresting him and while holding him in custody. Perhaps those cases would apply if in the present case Officer Lohr had simply walked into the lounge and engaged in a fistic encounter with the plaintiff, without exercising any of the duties or authority of his office. However, these are not the facts.
Apparently, the basic rationale of the district court's opinion is that although Officer Lohr went through the motions of arresting plaintiff and taking him into custody, he did not actually intend to take plaintiff to jail, his true purpose being only to get plaintiff away from the lounge where he could administer the beating without witnesses. We cannot agree with this reasoning. Of course, the officers did not testify that this was their intention. They both said that Lohr arrested plaintiff and was taking him to jail for committing the offense of cursing an officer. It is true Lohr changed his mind and, after the beating, deposited plaintiff at his home. However, regardless of Officer Lohr's intent, the fact is that at the time of the wrongful injuries Officer Lohr was performing his duties as a policeman, he having arrested plaintiff and being in the act of taking him to jail.
We conclude that plaintiff is entitled to judgment not only against Officer Lohr but also against the city's liability insurer, The Travelers Indemnity Company. Furthermore, Travelers is entitled to judgment on its third party demand against Lohr.
The final issue is the sufficiency of the award. The altercation occurred on February 22, 1964. Plaintiff sustained soft tissue injuries to his head, chest, abdomen and back, and a contusion of his left eye. He was hospitalized for six days, three of which he was in traction for his back. He remained under the care of a physician and was disabled from working for approximately seven months, principally due to pain and muscle spasm in his back. However, there were no fractures and no permanent injuries.
The trial court awarded $499.63 for the medical expense, $840 for loss of wages during the seven months of disability and $1200 as general damages, a total of $2,539.63. In his written opinion, the district judge states that a reason for the low award for general damages is the inability of Officer Lohr to pay a greater amount. In view of our finding that The Travelers Indemnity Company is also liable, this is no longer a factor.
We conclude the award for general damages is insufficient and must be increased to the sum of $5,000. Unquestionably, this *906 was a severe physical beating and plaintiff suffered greatly, but he has no permanent injuries.
For the reasons assigned, the judgment appealed is amended in the following respects: (1) The total award is increased to the sum of $6,339.63. (2) In addition to judgment against defendant John Lohr, judgment is hereby rendered in favor of the plaintiff and against the defendant, The Travelers Indemnity Company, jointly and in solido with Lohr, for the amount of the award. (3) Judgment is rendered in favor of The Travelers Indemnity Company on its third party demand against Bobby Lohr for the full amount of any damages incurred by Travelers as a result of the judgment against it in the principal demand. Except as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellees.
Affirmed, as amended.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I disagree with my colleagues in their finding that defendant Lohr "was performing his duties as a city policeman" when he assaulted and injured plaintiff.
The evidence shows, and the majority agrees, that Lohr waited until he was off duty before committing this battery, and that he stopped by Fred's Lounge for the sole purpose of inflicting bodily harm on plaintiff Bourque, to avenge Lohr's younger brother.
Although Lohr was in uniform and used the word "arrest," the evidence establishes that Lohr did not intend at any time to arrest Bourque or to take him to jail. His sole motive was to get Bourque out of the building and away from his friends, so that Lohr could satisfy his own personal animosity toward plaintiff by beating him up at a place where his actions would not be witnessed.
Bourque committed no criminal offense of any kind, and Lohr had no grounds on which he could have made a legal arrest. The fact that he used the word "arrest" as a ruse or subterfuge to get Bourque away from his friends is born out by Lohr's own admission that he never took Bourque to jail at all, and that he has never preferred any charges against him. After leaving Fred's Lounge, Lohr drove to a secluded spot near the lounge, stopped his car, pulled Bourque out of it and proceeded to beat him up so severely that Bourque had to be hospitalized for about a week. After committing this serious battery, Lohr ordered Bourque back into the car, took him to his home, put him out of the car near Bourque's front yard, and drove away. Bourque's parents then took him to the hospital.
The evidence shows that after Lohr had talked to Bourque in Fred's Lounge, Bourque returned to the table where he had been playing cards, and he rebuked the other card players for not waiting for him to return before resuming the card game. In rebuking them, Bourque jokingly referred to his card playing friends as "chues," a colloquial term which Lohr did not understand. Lohr inquired as to the meaning of the word which Bourque had used in addressing the card players, and upon being told that it was a derogatory term, Lohr then informed Bourque that he was under arrest for "using profanity to a police officer." It is inconceivable that Lohr intended to arrest Bourque and to take him to jail for such an incident. His sole purpose was to get Bourque outside the building to assault him.
The trial judge found, as a matter of fact, that Lohr's actions were strictly personal and had nothing to do with his duties as a policeman. He made the following observations in his excellent reasons for judgment:
"And in the Court's opinion, the evidence indicates with the certainty required in such cases, that he also entered *907 with the avowed purpose of taking revenge upon his brother's assailant * * *.
"* * * the Court feels that the evidence preponderates * * * that the stopping of this vehicle and the ensuing fight was again fomented by the primary objective of Mr. Lohr, that is, to revenge the earlier beating received by his younger brother at the hands of Mr. Bourque. * * *
"* * * it is clearly established by the record that when this incident ensued, John Lohr was not officially on duty as a police officer of the City of New Iberia * * *.
"This Court finds from the evidence adduced that John Lohr's actions on the occasion in question can under no stretch of the imagination be considered as the performance of work he was employed to do but were rather clearly of his own design and exercised for the sole purpose of personally vindicating his brother * * *.
"It therefore in my opinion cannot be said that the fight between Mr. Lohr and Mr. Bourque which later ensued occurred at a time when the defendant was in the performance of an official act."
Article 2320 of the Civil Code makes employers liable, under the doctrine of respondent superior, for the damage occasioned by the fault of their employees "in the exercise of the functions in which they are employed." That phrase is a codal expression of the frequently used term, "in the course and scope of employment." It is well settled, however, that the very liberal construction given to the latter phrase in workmen's compensation cases is not followed in tort actions for personal injuries and damages, where the courts have adopted a strict interpretation and construction. Wills v. Correge, 148 So.2d 822 (La.App. 4 Cir. 1963); Bradley v. Humble Oil & Refining Company, 163 So.2d 180 (La.App. 4 Cir. 1964); Harris v. Hymel Store Co., 200 So.2d 84 (La.App. 1 Cir. 1967).
The mere fact that the acts of the employee were committed during the course of his employment is not sufficient to warrant a holding that they were committed within the scope of the employment. The responsibility of the employer for a tort committed by his agent or employee does not depend upon whether the tort was committed in the course of the employment. The test to be applied in determining whether the employer is liable is whether the tort was committed within the scope of the employment. Godchaux v. Texas & Pacific Ry. Co., 144 La. 1041, 81 So. 706 (1919); Bradley v. Humble Oil & Refining Company, supra.
In Comfort v. Monteleone, 163 So. 670 (La.App.Orl.1935), a house detective, employed to eject offending guests, struck the plaintiff while ejecting him from the employer's hotel. The detective was authorized to eject guests, he was on duty at the time, the plaintiff had created a disturbance in the lobby of the hotel by repeatedly charging the detective with robbery and theft, and the detective was performing the duties of his employment in ejecting him. After removing plaintiff from the hotel, the detective accompanied him to the police station and preferred charges against him. The Orleans Court of Appeal held that the employer of the detective was not liable for the injuries sustained by plaintiff as a result of the battery, because the detective in striking plaintiff was "prompted by personal motives and not by any desire to further the interests of his employers," and that he "plainly was acting solely in the venting of his own personal spite." In so holding, the court stated:
"* * * If the assault was committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify personal animosity, or to carry out an independent purpose of his own, then the master is not liable.

*908 "* * * An employee is never vested with authority to exercise force in the venting of personal animosity.
"* * * if a servant with authority to police his master's premises and to eject objectionable characters has a personal enemy, and he and his personal enemy engage in a private altercation, surely the master is not made liable for the result by the fact that the employee's duty contemplated that on proper occasion he should eject objectionable characters."
In Godchaux v. Texas & Pacific Ry. Co., supra, the agent of the defendant railway companies struck and injured plaintiff on the railway premises, while the agent was on duty and while he was obtaining an express shipment for plaintiff. The agent, however, had a pent-up animosity toward plaintiff, and the battery was committed following a series of arguments which occurred while the agent was waiting on plaintiff. Our Supreme Court observed that "in a sense, therefore, the tort committed by the agent arose from and out of the business that he had authority to conduct for the defendant companies, and he was acting within the scope of his employment up to the instant when, in a burst of passion, he committed the assault." The court concluded, however, that the battery committed by the agent "was not within the scope of his employment," and that the employers thus were not liable for the damages which resulted from that incident.
In Bradley v. Humble Oil & Refining Company, supra, a service station attendant deliberately hosed a customer with gasoline. Our brothers of the Fourth Circuit Court of Appeal held that the employer was not liable in damages because the actions of the employee "were not within the scope of his employment."
In my opinion the rules applied in the cases just cited should be applied in the instant suit.
In this case, my colleagues have held that the City of New Iberia, or its insurer, is liable in damages for the actions of this off-duty police officer, solely because the officer still had on a uniform and used the word "arrest." I feel that Lohr was not acting in the furtherance of his employer's objectives when he assaulted plaintiff to satisfy a personal vengeance, and that he thus was not acting within the scope of his employment. Under those circumstances, I do not feel that Lohr's employer is liable for the damages which plaintiff sustained as a result of the physical beating which Lohr administered to him.
For these reasons, I respectfully dissent.