277 So.2d 513 (1973)
Daryl CHEATHAM, Plaintiff-Appellee,
v.
Walter T. LEE et al., Defendants-Appellants.
No. 9295.
Court of Appeal of Louisiana, First Circuit.
April 9, 1973.
Rehearing Denied May 29, 1973.
*514 Joseph F. Keogh, City Parish Atty., Baton Rouge, for defendants-appellants.
Joseph P. Brantley, IV, Covert & Brantley, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, BLANCHE and WATSON, JJ.
SARTAIN, Judge.
Plaintiff instituted this suit for damages for personal injuries sustained as a result of a battery allegedly committed upon him by Officer Walter T. Lee of the Baton Rouge City Police. Named as defendants in the suit were Walter T. Lee and the City of Baton Rouge. Judgment was rendered by the trial court in favor of plaintiff and against defendants, in solido, awarding as damages the sum of $3,692.90. From this judgment the City of Baton Rouge has appealed and plaintiff has answered the appeal seeking an increase in the award. Defendant, Walter T. Lee, has not appealed.
The issues presented are, first, whether Officer Lee used excessive force upon the plaintiff, second, whether the City of Baton Rouge can be held liable for the tort of its employee-policeman, and third, whether the trial court erred in the amount awarded as damages.
The first issue presented is primarily factual in nature and the plaintiff's and defendant's versions of the incident are in substantial conflict.
The case arose out of an incident which occurred on March 26, 1971 at a party being held at a location known as the "Players Gate" on O'Neal Lane in East Baton Rouge Parish but outside the city limits of Baton Rouge. The party was sponsored by a high school girls club. The club had sold tickets to the dance, and a large number of young people were in attendance.
Walter T. Lee testified that at that time he was employed as a City Police Officer in Baton Rouge. He was contacted by one of the young ladies in the sponsoring club and was hired to chaperone the party. Officer Lee cleared his employment with his immediate superior, a Sergeant Henderson, and following Henderson's orders he called the accounting office and informed a Miss Frances Sterrett of his employment as a chaperone for this party. At that point neither Lee, Henderson, nor the lady in the accounting office knew that the party was to be held outside the city limits, and no efforts were made to ascertain the exact location of the "Players Gate".
Assuming that he was acting fully within his capacity and authority as a city policeman, *515 Officer Lee testified that he attended the party. He was dressed in full uniform and was armed with his pistol and a "slap jack", which he described as a piece of leather with lead in it, similar to a blackjack.
Officer Lee stated he was inside the building when he heard cries of "fight" and he immediately went outside where he found several young men engaged in a scuffle between two cars parked near the front door. Lee testified that he grabbed the person on top and threw him back, but when he went down to grab the second person someone jumped on him from the front, covering his face. Officer Lee stated he hit the person on top of him with his "slap jack" thereby knocking him off. Lee said he could not be sure who it was he hit with the slap jack but that after the scuffle was over plaintiff had a bloody face. Officer Lee testified that he told the three boys to leave the dance or he would arrest them. A short time later the dance ended and Officer Lee returned to the Highland Road Police Sub-station where he made a report of the incident. It was not until the next morning that Officer Lee was informed by his superior that the "Players Gate" was outside the city limits and that his employment as a chaperone there would not be recognized.
Plaintiff testified that he and his date were walking into the dance when he saw what appeared to be an altercation between a Mr. Bob Carter and a Mr. Robert Holmes. Cheatham stated that he knew the two young men and also knew them to be close friends. In order to keep the two from coming to blows he grabbed Robert Holmes, threw him to the ground, and laid on top of him. While in this position Cheatham testified that someone grabbed him from behind and hit him in the face with a hard object. Cheatham stated that he turned around and saw Officer Lee, who then hit him several more times with the slap jack. Cheatham further testified that Officer Lee then threatened to arrest him if he did not leave the party. He left the party and sought medical treatment at a local hospital.
Miss Pam Porter, plaintiff's date, testified that she was standing within several feet of the altercation. She stated that Carter and Holmes were not fighting when plaintiff grabbed Holmes, but were merely pushing one another in such a manner as to indicate that it might lead to a fight. She testified that she did not see Officer Lee come out of the building, but first saw him when he jumped on plaintiff from behind and began striking him with the slap jack.
Two additional eyewitnesses, Mr. Robert Holmes and Mrs. Nancy Wood, both testified to substantially the same effect as plaintiff and Miss Porter. All of the witnesses, with the exception of Officer Lee, testified that they did not see plaintiff or anyone else attempt any overt act toward the policeman during the incident.
Based upon this testimony, the trial court held that Officer Lee acted unreasonably in using his slap jack to strike plaintiff without first ascertaining the true nature and extent of the difficulty. Thus, the trial court held that this use of unnecessary force amounted to an intentional battery upon the plaintiff.
It is well settled that factual conclusions of the trial court, particularly when based on an evaluation of the credibility of the witnesses, should not be disturbed on appeal unless manifestly erroneous. Readco Industries Inc. v. Myrmax Specialties, Inc., 236 So.2d 573 (1st La. App.1970), writ refused, 256 La. 865, 239 So.2d 362 (1970).
We find, as did the trial court, that the preponderance of the evidence indicates that the difficulty between Cheatham, Holmes, and Carter was not of such seriousness as to require the degree of force used by Officer Lee. We cannot say that the acceptance by the trial court of plaintiff's version of the incident and the ruling based thereon that this use of unnecessary force amounted to a deliberate battery upon plaintiff is manifestly erroneous.
*516 The second issue relates to the determination of liability upon the part of the City of Baton Rouge by the trial court based upon a finding that Officer Lee was acting within the course and scope of his employment at the time of the incident.
It is settled that an employer may be held liable for an assault and battery committed by an employee acting within the course and scope of his employment, and that the use of unnecessary and excessive force by a police officer during the performance of his official duties renders both the officer and his employer liable for the resulting injuries. Taylor v. City of Baton Rouge, 233 So.2d 325 (1st La.App.1970), writ refused, 256 La. 255, 236 So.2d 32 (1970); Bourque v. Lohr, 248 So.2d 901 (3rd La.App.1971).
Defendant-appellant contends that since the incident occurred while Officer Lee was off-duty and outside the Baton Rouge city limits, then no liability can attach to the City for the actions of its policeman-employee under the above stated rule.
The testimony pertaining to this issue establishes that Officer Lee knew the procedure to be followed in undertaking off-duty chaperone activities. He obtained the necessary forms and discussed the procedure with his superior, Sergeant Henderson. Lee's employment was cleared by his superior and the accounting office was so informed. At this point no one knew that the location was outside the city limits and no effort was made by Lee or his superior to ascertain the location. Officer Lee testified he attended the party in uniform and felt that in doing so he had the power and authority of a fully authorized city policeman. This is evident from the testimony of Lee and the other witnesses to the effect that he threatened to arrest the participants in the incident, and that this threat was made with the apparent authority to carry it out. It is also significant to note that the City Police officials did not assert that Officer Lee had acted without official authorization and outside the city limits until the morning following the incident after a complaint had been filed by plaintiff.
Appellant cites the case of Charles v. Town of Jeanerette, 234 So.2d 794 (3rd La.App. 1970), writ refused, 256 La. 853, 239 So.2d 358 (1970) in support of the contention that no liability can attach to the City for torts committed by its policeman-employee outside its jurisdictional limits. In that case a city policeman pursued a speeding motorist outside the town limits and into an adjoining parish where the motorist was subsequently shot and killed by the policeman. The Third Circuit held that the municipality could not be held liable for damages resulting from tortious acts of its employee which occurred outside of the jurisdictional limits of the municipality. The court went on to state that the actions of the policeman were outside the scope of his employment because the incident occurred beyond the area in which the municipality could legally exercise its authority.
It is significant that in the Charles case the police officer must have known he was outside the municipal jurisdiction when he pursued the speeder beyond the town and parish limits. In the case at bar neither Officer Lee nor his superiors knew that the "Players Gate" was located outside the city limits.
We find more appropriate to the present controversy the case of Bourque v. Lohr, supra. There an off-duty policeman, still in uniform and armed, proceeded in his personal auto to a local bar to check on an alleged fight between the plaintiff and the officer's brother. Upon arriving at the bar, words passed between the officer and the plaintiff, and the officer informed plaintiff he was under arrest. The plaintiff was placed in the officer's personal car and driven about five blocks from the bar where he was removed from the car and beaten by the officer. The plaintiff was never arrested but was taken home after the beating. In holding the municipality liable for the plaintiff's injuries, the court ruled that the officer was within the *517 course and scope of his employment even though he was off-duty at the time of the incident. It was also held that since the officer was in full uniform and armed that he possessed both the actual and apparent authority to perform the duties normally associated with police work.
In the instant case the trial court ruled that the evidence was sufficient to show that Officer Lee was acting within the course and scope of his employment as a city policeman. We believe, as did the judge a quo, that at the time of the incident Officer Lee possessed the apparent authority to represent the City in his law enforcement capacity, even though he was technically outside the city limits of Baton Rouge. When Lee's superiors allowed him to undertake to chaperone this party they in effect clothed him with the apparent power and authority to perform the duties normally associated with police work. It was while performing these duties that Officer Lee used the unnecessary and excessive force which resulted in plaintiff's injuries. Therefore, we affirm the finding of liability on the part of the City of Baton Rouge for the injuries resulting from the tortious act of its employee while in the course and scope of his employment.
The final issue relates to the sufficiency of the award. Plaintiff sustained a fracture of the nose and a fracture of the nasal septum as a result of the blows he received. He was treated for pain and swelling on the night of the incident at a local hospital and was released. It took several days for the swelling to subside after which he was admitted to the hospital and the fracture was surgically reduced. He was hospitalized for only one day. Thereafter, plaintiff continued to have sinus and breathing difficulties, and the bridge of his nose remained deviated to the left.
Dr. Richard W. Hughes, a Baton Rouge plastic surgeon, testified that plaintiff will have to undergo two corrective surgical procedures to eliminate his difficulties. Dr. Hughes stated that to correct the obstruction of the airway a submucous resection will be needed, and a cosmetic rhinoplasty procedure will be required to correct the bridge deviation. He testified that each of these procedures will require two days' hospitalization. Dr. Hughes further stated that the procedures would result in only minimal pain, discomfort, and disability to plaintiff.
Plaintiff seeks an increase in the award by the trial court of $2,500.00 for this physical injury. We conclude that the award is not inadequate and that the trial judge did not abuse the discretion vested in him in making the assessment. La.C.C. Article 1934(3).
Plaintiff also seeks an increase in the award of $1,000.00 for future medical expenses to an award of $1,300.00. Dr. Hughes testified that the two operations would cost a total of $800.00, and that the hospitalization charges for each procedure would amount to approximately $250.00. The trial court in oral reasons for judgment held that since plaintiff had only claimed $1,000.00 for future medical expenses, the award would be limited by the pleadings to that amount. Plaintiff asserts that the unobjected to testimony of Dr. Hughes establishes that the total figure for future medical expenses will be $1,300.00 and therefore, the pleadings should be deemed to have been expanded to reflect that amount. With this contention we agree. It has been held that in the absence of an objection to evidence that medical expenses are greater than the amount originally demanded, the pleadings will be deemed enlarged to that extent. Huval v. Burke, 160 So.2d 810 (3rd La.App. 1964); Kegley v. Grain Dealers Mutual Insurance Co., 207 So.2d 824 (3rd La.App.1968); La.C.C.P. Article 1154.
Accordingly, for the above reasons the judgment of the district court is amended to reflect an award for future medical expenses in the amount of $1,300.00. In all other respects the judgment is affirmed. Defendant-appellant is cast for all costs permitted by law.
Amended and affirmed.