465 So.2d 254 (1985)
Jerry Lane SULLIVAN, Plaintiff-Appellee,
v.
Howard QUICK, et al., Defendant-Appellant.
No. 84-163.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
Writ Denied May 3, 1985.
*255 Thomas, Dunahoe & Gregory, A.J. Gregory, Jr., Natchitoches, for defendant-appellant.
Wright & Wright, R. Stuart Wright, Natchitoches, for plaintiff-appellee.
Howard Quick, in pro. per.
Before DOMENGEAUX, KNOLL and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether or not the Sheriff of Natchitoches Parish, Louisiana is liable for an intentional tort committed by one of his uniformed deputies during an off-duty arrest.
Plaintiff, Jerry L. Sullivan, sued defendant, Deputy Howard Quick, for injuries received when Quick arrested and physically beat Sullivan. Sullivan also sued Sam James, then Sheriff of Natchitoches Parish, Louisiana on a theory of vicarious liability. Since James was no longer sheriff at the time of trial, he was dismissed and his successor, Sheriff Norman Fletcher, was substituted as a defendant. The trial court found Quick and Sheriff Fletcher liable in solido for $18,250.00 in damages. Only Sheriff Fletcher appeals. We affirm.
Since defendant Quick has neither appealed nor answered the appeal, the judgment of the district court is final insofar as it decrees liability on his part.
Sheriff Fletcher sets forth two specifications of error on appeal:
(1) The trial court erred in holding that he was responsible for the unjustified and unwarranted battery and purely intentional tort inflicted by Deputy Howard Quick on the plaintiff; and
(2) The trial court erred and abused its much discretion in awarding $18,250.00 in general damages to the plaintiff.

FACTS
The undisputed facts of this case were succinctly stated by the trial judge in his excellently written reasons for judgment which we adopt as our own, to-wit:
"The evidence in this case reveals that the plaintiff, JERRY SULLIVAN, is an agent for the Louisiana Department of Wildlife and Fisheries, who in the course and scope of his duties observed James Keith Bates and Shelia Bates hunting at night from a public highway with a spotlight and gun. This observation was made on the night of December 18, 1979 and subsequent to this discovery agent Sullivan, the plaintiff, secured an arrest warrant for Mr. and Mrs. Bates and along with agent Hugh Hay went to the residence of Mr. and Mrs. Bates to serve the warrant at approximately 5:15 P.M. on December 22, 1979. Upon being arrested Mr. and Mrs. Bates requested that they be permitted to go by the residence of Mr. Howard Quick, the defendant, for the purpose of advising him that they had been arrested and would not be able to go Christmas Shopping. Deputy Howard Quick is the father of Mrs. Bates. The plaintiff and the other wildlife and fisheries agent permitted Mr. and Mrs. Bates to drive their own automobile to the home of Deputy Howard Quick. When they arrived at the residence of Howard Quick, the Bates were permitted to go inside Mr. Quick's home and agents Sullivan and Hay remained outside in their wildlife and fisheries unit. Both the plaintiff and agent Hay were dressed in the uniform which is standardly issued to all agents of that department and were easily identifiable as wildlife and fisheries agents.
"Within a few minutes, Deputy Howard Quick exited the residence and walked toward the pickup truck in which agents Sullivan and Hay were sitting. Agent Hay stepped out of the pickup truck and shook hands with Deputy Quick. Deputy Quick then walked behind the pickup truck and held out his hand in what appeared to be an attempt to shake agent Sullivan's hand. However, *256 instead of shaking agent Sullivan's hand and then releasing his hand, Deputy Quick grabbed agent Sullivan's hand and began hitting him with the other hand. After Deputy Quick had inflicted some 4 or 5 blows on the plaintiff, he somehow broke loose of the hold of Deputy Quick and stepped back. It was at this time that James Keith Bates grabbed agent Hay's weapon from his holster. When this took place, agent Sullivan drew his weapon from his holster and pointed it at Deputy Quick. At this point the fighting terminated and Deputy Quick requested in a civil manner that he be permitted to see the arrest warrants which were being served on his daughter and son-in-law. The plaintiff then holstered his weapon and returned to the wildlife and fisheries unit for the purpose of showing the warrants to Deputy Quick. While agent Sullivan was in the pickup truck Deputy Quick again attacked him hitting him several more times mainly about the head and face. It was during this time that Deputy Quick removed agent Sullivan's weapon from his possession thus disarming both agents Hay and Sullivan. At some point during this second altercation, Deputy Quick informed the plaintiff that he was placing him under arrest and that he would be taken to the Natchitoches Parish Jail as his prisoner. He further informed the plaintiff that `he was the law in Natchitoches Parish and that he would serve any warrants that had to be served.' At some point during the second flurry of blows, agent Sullivan managed to call for help on his patrol unit radio. This call was overheard by a State Trooper, Mr. Scotty Fletcher, and by two wildlife and fisheries department agents, Billy Crawford and F.B. Harper. Within a short time after this call was made agents Crawford and Harper and Trooper Fletcher arrived at the scene. Agent Crawford testified at the trial of this matter that by the time he arrived the confrontation was over. Agent Crawford further testified that Deputy Howard Quick was obviously in charge of the situation and had apparently arrested agent Sullivan for reasons that were not known to agent Crawford at that time.
"Deputy Quick then placed agent Sullivan, who was in a semi-conscious state and bleeding severely from the nose, in his Natchitoches Parish Sheriff's patrol car to transport him to Natchitoches. The wildlife and fisheries agents requested that they be permitted to transport Mr. Sullivan to the hospital but this request was denied by Deputy Quick. The other wildlife and fisheries agents also requested that Deputy Quick advise them as to what agent Sullivan was being arrested for and this request was likewise denied by Deputy Quick. The wildlife and fisheries agents and state trooper, not wanting to have any further confrontations with Deputy Quick, permitted him to take agent Sullivan as a prisoner and transport him to Natchitoches which is some twenty-five (25) miles south of the point where the arrest took place. Agent Sullivan testified that during the trip from Ashland to the Sheriff's Office Deputy Quick made several statements to him to the effect that when he, Deputy Quick, got out of uniform he was going to give him a worse beating.
"Deputy Quick then drove agent Sullivan to the city of Natchitoches but carried him to the Natchitoches Parish Hospital rather than to the Sheriff's Office. They were met at the Natchitoches Parish Hospital by other deputies of the Natchitoches Parish Sheriff's Office who read agent Sullivan his Miranda warnings on at least two occasions.
"At some time later agent Sullivan learned that he had been arrested for disturbing the peace and resisting arrest.
"As a result of the altercation, Agent Sullivan suffered a broken nose, a laceration to the upper lip and a number of bruises about the face. The laceration to the lip was closed by six (6) stitches and the broken bones in the nose were repaired by Dr. James C. McDonald of *257 Shreveport, Louisiana whose specialty is facial plastic reconstructive surgery." (Trial Transcript Pages 99 to 102.)

VICARIOUS LIABILITY OF SHERIFF FLETCHER
Sheriff Fletcher contends that he is not vicariously liable as Deputy Quick's employer because the actions of Deputy Quick were not within the scope and course of his employment as a sheriff's deputy. He contends that Deputy Quick beat Agent Sullivan because he was mad that he was arresting his daughter and son-in-law, and that the incident was an entirely personal matter to Deputy Quick and did not involve the Natchitoches Parish Sheriff's Department. We disagree and affirm the trial court ruling that Sheriff Fletcher is vicariously liable for the intentional tort committed by his uniformed off-duty deputy, Howard Quick.
The evidence shows that Deputy Quick was dressed in the uniform of the Natchitoches Parish Sheriff's Department and about to go on duty when the incident occurred. He had a marked patrol unit with him at the time which was furnished for his use. Agent Sullivan would not have suffered these beatings except for the fact that he respected Deputy Quick's authority as a Natchitoches Parish Sheriff's Deputy. Had Deputy Quick not been a uniformed sheriff's deputy, Agent Sullivan would probably have arrested Deputy Quick as soon as he escaped from his first attack or certainly after he was forced to draw his weapon after Deputy Quick's son-in-law disarmed Agent Hay. Furthermore, Agent Sullivan would not have voluntarily agreed to holster his weapon and to show Deputy Quick the warrants, after the first beating, if Deputy Quick had been just a private citizen. It was at the time that Agent Sullivan went to his truck to get the warrants that Deputy Quick again attacked him, landing several blows to Agent Sullivan's face and head. It was also during the time of the second beating that Deputy Quick placed Agent Sullivan under arrest. In this case, Deputy Quick was in full uniform and had both the apparent and actual authority to make an arrest and take plaintiff into custody. While Deputy Quick was obviously abusing his authority under the circumstances when he arrested Agent Sullivan he, nonetheless, was authorized to make off-duty arrests without a warrant. See LSA-C.Cr.P. Art. 213; Bourque v. Lohr, 248 So.2d 901 (La.App. 3rd Cir.1971). Wildlife and Fisheries Agent Billy Crawford, who arrived on the scene shortly after the two beatings had already occurred, testified that Deputy Quick was definitely in charge of the situation and had arrested Agent Sullivan. This is corroborated by the fact that Deputy Quick would not allow any of the other law enforcement officials on the scene of the altercation to take Agent Sullivan to the hospital because of Deputy Quick stating he was taking Agent Sullivan immediately to jail and then leaving with Agent Sullivan in the Natchitoches Parish Sheriff's Department marked patrol unit.
It is well settled that the employer of a police officer is liable for the torts committed by the officer during the performance of his official duties. Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La.1981); Bourque v. Lohr, supra, and cases cited therein. Furthermore, an officer's employer is still held liable in cases where the officer has abused the apparent authority given him by the employer and has committed acts which are not part of his customary duties. Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979).
In Applewhite v. City of Baton Rouge, supra, the First Circuit Court of Appeal held the City of Baton Rouge vicariously liable for the conduct of two of its on-duty uniformed police officers who arrested Ms. Applewhite for vagrancy and then drove her in a City Police car to an empty stadium where they forced her to engage in oral sex with one of them and in sexual intercourse with both of them.
Employers of off-duty police officers in uniform have been held liable for torts of the officer where the law enforcement officer *258 has abused the "apparent authority" given such officer to act in the public interest. Cheatham v. Lee, 277 So.2d 513 (La. App. 1st Cir.1973), writ denied 279 So.2d 696 (La.1973); Bourque v. Lohr, supra. Employers of off-duty police officers in civilian clothes have also been held liable for torts of the officer where the law enforcement officer has abused the "apparent authority" given such officer to act in the public interest. Sciortino v. Alfano, et al., 435 So.2d 1010 (La.App. 5th Cir.1983), writ denied 437 So.2d 1149 (La.1983). In Bourque v. Lohr, supra, we held the employer's liability insurer liable for the injuries caused by an off-duty police officer in uniform who arrested the plaintiff, then put him in a private unmarked car for transportation to the police station and on the way stopped and beat plaintiff for the personal reason of obtaining revenge upon the plaintiff who had been in a previous fight with the police officer's younger brother.
In Sciortino v. Alfano, et al., supra, the employer was held liable for the injuries caused by an off-duty police officer in civilian clothes when the officer sought out plaintiff at his place of employment, attempted to collect money allegedly owed by the plaintiff to him, and struck and injured the plaintiff when he attempted to leave.
Agents Sullivan and Hay gave conflicting testimony with Deputy Quick as to what occurred and the trial judge made these findings of fact:
"The facts of this case show that Deputy Quick was in uniform, had a marked Sherif's department unit available and nearby and was asking questions of the two wildlife agents which would only have been asked by a law enforcement officer with the apparent authority to make those inquiries. There is no doubt that had deputy Quick not been acting in flagrant abuse of his office, that is taking advantage of his apparent authority, he would not have been able to do what he did. Had Deputy Quick not been a uniformed law enforcement officer Agent Sullivan would never have holstered his weapon after the first flurry of blows and at a time when he had restrained Deputy Quick by pointing the weapon at him. It is further noted that it was the apparent authority of Deputy Quick to make this arrest which permitted Deputy Quick to take Agent Sullivan as a prisoner and place him in a patrol unit in the presence of a state trooper and two other wildlife agents. Had Deputy Quick not been in uniform and possessed of the apparent authority to make the arrest and commit the battery it would not have been permitted." (Trial Transcript Pages 103 to 104.)
The trial court in making these findings concluded that Deputy Quick, while off-duty and in uniform, abused the "apparent authority", given to him to act in the public interest.
We cannot say that this determination was clearly erroneous or that it lacks a factual basis and we will not disturb it on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
For these reasons we find that Sheriff Fletcher, in his official capacity as Sheriff of Natchitoches Parish, Louisiana, is liable for the wrongful act of one of his off-duty deputies in uniform at the time of the commission of the wrongful act.

DAMAGES
Agent Sullivan was severely beaten about the head and face on two separate occasions. As a result of these beatings, Agent Sullivan suffered two fractured nasal bones, a laceration on his inner lip requiring six stiches, and swelling and discoloration around his nose and eyes. Dr. James McDonald examined Agent Sullivan in the Schumpert Hospital emergency room on December 23, 1983. Dr. McDonald observed that Agent Sullivan was in moderate pain and that his left nasal bone was pushed outward to the right and his right nasal bone was collapsed inward. He also noted swelling over the top of Agent Sullivan's dorsum, in both cheeks and around both eyes. Agent Sullivan testified that his nose was knocked out of place about *259 one-fourth of an inch. Dr. McDonald performed three hours of minor plastic surgery which involved deadening the nose, placing both bones in their original position, and finally packing and splinting the nose. Dr. McDonald predicted the entire healing process would take several weeks.
On December 27, 1983, Agent Sullivan returned to Dr. McDonald to have his nose repacked. At that time he complained that he was still experiencing moderate pain and that he was unable to breathe through his nose which made it difficult for him to sleep. On January 17, 1984, Agent Sullivan again returned to see Dr. McDonald. At that time he was still experiencing pain on the left side of his nose, however, X-rays showed that the bones were healing in place. On March 6, 1980, Agent Sullivan again saw Dr. McDonald for the last time, at which time he still complained about nasal congestion.
Dr. McDonald testified that the surgery was a success cosmetically and medically, and that it would be very unlikely that Agent Sullivan would need additional surgery. However, Dr. McDonald predicted that Agent Sullivan would probably have to live with sinus problems for the rest of his life.
In explaining the $18,000.00 award for general damages, the trial judge noted:
"In addition to the physical injuries and pain the plaintiff was subjected to fright, embarrassment, humiliation (perhaps to the point of degradation) and imprisonment for which he is likewise entitled to damages. The record herein justifies an award of Eighteen Thousand ($18,000.00) dollars plus proven medical special damages and that will be the amount of the judgment herein." (Trial Transcript at page 105.)
We find that the trial court did not abuse its discretion in awarding $18,000.00 in general damages. In reviewing a trial court's award of general damages, we may not impinge upon the great discretion given the trial judge on the issue of damages by replacing his award with one that we subjectively believe to be adequate. Reck v. Stevens, 373 So.2d 498 (La.1979); Gearen v. Insured Lloyds Ins. Co., 461 So.2d 1192 (La.App. 3rd Cir.1984). We cannot say that the trial court committed a clear abuse of discretion in awarding damages in light of the particular facts of this case and for this reason will not decrease the award of the trial court.
For the reasons given above, the trial court's judgment rendering judgment against Sheriff Norman Fletcher, in his official capacity as Sheriff of Natchitoches Parish, Louisiana, is affirmed. The costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.