_[gPETTIGREW, J.
This ease presents an issue res nova in this circuit as to whether a political subdivision may be vicariously liable for the negligence of an employee driving a vehicle owned by the political subdivision regardless of whether the employee acted within the course and scope of her employment. From a judgment finding the political subdivision liable pursuant to a theory of respondeat superior, the political subdivision has appealed.
FACTS
On October 22, 1998, petitioner, Richard L. Cooper, Jr. (“Mr.Cooper”), was involved in an automobile accident when the 1995 Mazda Protégé he was driving was struck from the rear by a 1998 Ford Crown Victoria operated by defendant, Kathy Reed (“Ms.Reed”), an employee of the Baton Rouge Police Department. The accident occurred at the end of the Interstate 10 down ramp at the Gonzales/Burnside exit for Louisiana Highway 24 in Ascension Parish, Louisiana.
Mr. Cooper subsequently filed a Petition For Damages on October 14, 1999 [1], and named Ms. Reed, Police Chief Greg Phares, the City of Baton Rouge and the City of Baton Rouge Police Department, and XYZ Insurance Company as defendants. Mr. Cooper filed a supplemental and amending petition on November 23, 1999, wherein it was alleged that at the time of the accident, Ms. Reed was serving as a police officer and operating a patrol car owned by the City of Baton Rouge Police Department. Mr. Cooper further urged application of the theory of “respon-deat superior.”
On November 15, 2000, an answer to Mr. Cooper’s original and supplemental petitions was filed on behalf of defendant, City of Baton Rouge (“City”). The City admitted that Ms. Reed was a police officer at the time of the accident and that she was driving a car owned by the City. Said answer asserted however that neither the City nor the City of Baton Rouge Police Department Risk Management were entities capable of being sued or responding in judgment, and denied that the City of Baton Rouge Police | ¡¡Department Risk Management was the liability insurer of the vehicle operated by Ms. Reed. All other remaining allegations were generally denied. Through an amended answer, the City admitted that Ms. Reed was an employee of the Baton Rouge City Police Department at the time of the accident, and operated a vehicle owned by the City of Baton Rouge/Parish of East Baton Rouge. The City denied however that Ms. Reed was “on duty” at the time of the accident, and further denied that Ms. Reed was acting within the course and scope of her employment.
*414 A bench trial was held in this matter on April 11, 2001. At the conclusion of the testimony, the court took the matter under advisement. In a judgment signed on August 21, 2001, the trial court rendered judgment in favor of Mr. Cooper and against the City. On September 14, 2001, the City filed a motion for a suspensive appeal.
ISSUE PRESENTED ON APPEAL
The sole issue presented in connection with this appeal is whether respondeat superior liability may be imposed on an employer if the plaintiff fails to establish that the employee was acting in the course and scope of her employment.
DISCUSSION
In its brief to this court, the City states that it previously admitted that at the time of the accident, its employee, Ms. Reed, was the driver of a vehicle owned by the City. The City asserts that at trial, Mr. Cooper failed to prove that Ms. Reed was acting within the course and scope of her employment with the City at the time of the accident.
By way of response, Mr. Cooper argues that the City has ignored an alternative ground for the City’s liability: the City is self-insured for motor vehicle liability and was both the owner and the self-insurer of the vehicle operated by Ms. Reed. Thus, Mr. Cooper contends that the City is liable in its capacity as insurer, irrespective of whether Ms. Reed was acting within the course and scope of her employment.
The Louisiana Motor Vehicle Safety Responsibility Law (“LMVSRL”)(La. R.S. 32:851 et seq.), provides a mandatory, comprehensive scheme for the protection of the public from damage caused by motor vehicles. Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). Pursuant to La. R.S. 32:861(A), the owner of every motor vehicle registered in the |4state of Louisiana (with the exception of certain classifications of vehicles) is required to maintain proof of financial responsibility as a result of the ownership/operation of the said motor vehicle. The motor vehicle owner may either: (1) purchase a motor vehicle liability policy with limits that conform to the requirements of La. R.S. 32:900(B)(2) or a binder for the same; (2) post a motor vehicle liability bond that satisfies the requirements of La. R.S. 32:861(B); (3) deposit with the state treasurer sufficient cash and securities to insure the risk in accordance with La. R.S. 32:861(C); or (4) obtain a certificate of self-insurance in accordance with the terms of La. R.S. 32:1042.
It is important to understand that self-insurance is, in actuality, not insurance at all. It is merely one of the four methods by which an owner of a motor vehicle is allowed to meet the requirements of the LMVSRL. Hearty v. Harris, 574 So.2d at 1237. To obtain a certificate of self insurance in accordance with La. R.S. 32:1042, a vehicle owner must present proof of sufficient assets to pay judgments against him. Tybussek v. Wong, 96-1981, p. 7 (La.App. 4 Cir. 2/26/97), 690 So.2d 225, 229, writs denied, 97-0766, 693 So.2d 731, 97-0795 (La.5/1/97), 693 So.2d 734, 734. Although self-insured vehicles are uninsured, a certificate of self-insurance indicates the self-insured is fiscally responsible and will pay damage claims and judgments involving its liability exposure. Hearty v. Harris, 574 So.2d at 1238. However, as the City points out in its brief to this court, La. R.S. 32:1041(A) provides that the LMVSRL does not apply to political subdivisions. Thus, the City is not required to maintain auto liability insurance and is not required to file a certificate of self-insurance. Even if the City would participate *415 in a program of self-insurance, this does not constitute an insurance company or an insurer under the laws of this state, and the development and administration of such a program shall not constitute doing an insurance business. La. R.S. 33:3062(B).
In a case arising out of similar facts, a motorist in New Orleans sustained injury when her vehicle was rear-ended by an unmarked police car operated by an off-duty police officer. The fourth circuit reversed that portion of the judgment that found the city vicariously liable for the plaintiffs injuries, and stated in pertinent part:
|RIn most cases, an innocent victim who is injured as a result of the negligence of an employee driving his employer’s car can be compensated through the employer’s liability insurance, regardless of whether the employee acted within the course and scope of his employment. This is so because the [LMVSRL] requires that vehicle owners maintain vehicle liability insurance. “At the heart of this statutory scheme is the decision to attach the financial protection to the vehicle rather than to the operator.” Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). The requirement to provide insurance generally includes the mandate that vehicle owners insure permissive use of their vehicles by providing omnibus coverage, which is “intended to extend liability beyond the law of principal and agent.” Id. at 1238.
However, a political subdivision, such as the City of New Orleans, is exempt from the requirements of the of the LMVSRL. La. R.S. § 32:1041. Because the City is not required to maintain vehicle liability insurance, it has no legal obligation to furnish omnibus insurance coverage for its vehicles. Consequently, assuming it has no independent liability, the City has no responsibility for the injuries to Ms. Hanson unless Lt. Benelli was in the course and scope of his employment with NOPD. Neither the LMVSRL nor any City regulation required that Lt. Benelli insure the automobile for his personal use, despite the foreseeable risk of harm arising from that use. Lt. Benelli had a personal automobile liability policy, but this policy excluded his use of the City-owned car he was driving at the time of this accident, as is discussed infra. As a result, there is no insurance available to compensate Ms. Hanson for the injuries she sustained in this accident if Lt. Benelli was not in the course and scope of his employment.
Hanson v. Benelli, 97-1467, p. 5 (La.App. 4 Cir. 9/30/98), 719 So.2d 627, 631, writ denied, 98-2754 (1/8/99), 735 So.2d 632.
Louisiana Civil Code article 2320, provides in pertinent part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the functions in which they are employed.
This court, in interpreting the language “ ‘in the exercise of the functions in which they are employed’ has held that said language is the Codal expression of the usual phrase “in the course and scope of the employment.” Romero v. Hogue, 77 So.2d 74, 79 (La.App. 1 Cir.1954). In order to establish vicarious liability for an employee’s negligence pursuant to La. Civ. Code art. 2320, it must be shown that the employee’s general activities at the time of the tort were within the course and scope of his employment. Ermert v. Hartford Insurance Company, 559 So.2d 467, 478 (La.1990).
In Hanson, the fourth circuit referred to its earlier decision in Johnson v. *416 Dufrene, 433 So.2d 1109 (La.App. 4 Cir.), writ denied, 441 So.2d 765 (La.1983), wherein the court held that prior jurisprudence has repeatedly stated that in those instances where an injury is caused by an employee’s negligence while driving a vehicle owned by his employer, each case must be decided on its own facts. Hanson v. Benelli 97-1467 at 10, 719 So.2d at 634. The fourth circuit in Johnson, and later in Hanson, further identified four important considerations that bear on the determination of whether the employee was acting within the course and scope of his employment. Those considerations are: (1) whether the vehicle was being used in such a manner as to benefit the employer; (2) whether the employee was subject to the employer’s control at the time of the accident; (3) whether the employee’s use of the vehicle was authorized by the employer; and (4) whether the employee’s motive arose from personal objectives or, instead, from his employer’s concerns. Hanson, 97-1467 at 10, 719 So.2d at 634 (citing Johnson, 433 So.2d at 1112).
This court is unable to ascertain from the record before us whether at the time of the accident, Ms. Reed was engaged in a function related to her employment or a mission that was purely personal. Ms. Reed was not served personally with the petition, and consequently, never filed an answer or otherwise made an appearance in this matter. Mr. Cooper was the only witness to present live testimony at trial, aside from the introduction of trial depositions given by various doctors. As previously mentioned, the City has denied that Ms. Reed was “on duty” at the time of the accident, and further that Ms. Reed was acting within the course and scope of her employment. Absent proof to the contrary, we must conclude that the City cannot be held vicariously liable in this case. As the fourth circuit observed in Hanson, “[t]o find vicarious liability based on these facts would have serious ramifications for the doctrine of respondeat superior, far beyond the context of this case.” Hanson, 97-1467 at 14, 719 So.2d at 635.
We reiterate the court’s sentiments expressed in Hanson:
Absent a legislative requirement that government vehicles be insured for any permissive use, the City, therefore, may allow unlimited personal use of its vehicles with impunity. This leaves members of the general public, as well as the employee-drivers, unprotected for much of the time these vehicles are being used. Given this State’s strong public policy that only insured automobiles be allowed on its roads, the Legislature should consider if this is the result it intended.
Hanson, 97-1467 at 6, 719 So.2d at 632.
CONCLUSION
For the foregoing reasons, the trial court’s judgment against the City of Baton Rouge is hereby reversed, and Mr. Cooper’s claims against the City are hereby dismissed with prejudice. All costs associated with this appeal shall be assessed against Mr. Cooper.
REVERSED.

. The chronological index contained in the record in this matter erroneously indicates that Mr. Cooper's petition was filed on October 14, 1998, prior to the date of the accident.