849 So.2d 675 (2003)
Errol A. DUPLANTIS, Sr. and Glenda Pope Duplantis
v.
DILLARD'S DEPARTMENT STORE, et al.
No. 2002 CA 0852.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*677 Stephen S. Stipelcovich, Law Offices of Michael J. Samanie, Houma, for Plaintiffs-Appellants Errol A. Duplantis, Sr. and Glenda Pope Duplantis.
William F. Dodd, Joseph J. Weigand, Jr., Weigand & Dodd, Houma, for Defendant-Appellee Jerry J. Larpenter, Sheriff for Terrebonne Parish.
Robert B. Butler, III, Law Office of Robert B. Butler, III, Houma, for Donny Pitre.
Before: PARRO, MCDONALD, and CLAIBORNE,[1] JJ.
PARRO, J.
Errol A. Duplantis, Sr. and his wife, Glenda Pope Duplantis, appeal a judgment granting a motion for summary judgment and dismissing their vicarious liability claims against Sheriff Jerry J. Larpenter that were based on the alleged negligence of an off-duty deputy working as a security guard. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Glenda Duplantis, an employee of Dillard's Department Store, Inc. (Dillard's),[2] was injured when a shoplifting suspect tried to escape from a security guard and shoved a swinging door into her. The security guard was Donny Pitre, an offduty deputy with the Terrebonne Parish Sheriff's Office (TPSO), who was working as a paid private security guard at Dillard's when the incident occurred. The shoplifting suspect, Brandon Washington, had tried to run from Pitre after first being confronted by him. With the help of some bystanders, Pitre had managed to capture Washington in a nearby parking lot, had handcuffed him with his hands behind his back, and had brought him back to the loading dock area of Dillard's. While filling out the incident report and waiting for the TPSO to send another deputy to take Washington into custody, Pitre saw Washington step over the handcuffs and bring his hands in front of his body. When Deputy Brent Favalora arrived, he removed Pitre's handcuffs and cuffed Washington with his hands in front of his body. When Favalora went to get his car to bring it to the loading dock area, Washington again tried to escape and, in doing *678 so, pushed a swinging door into Mrs. Duplantis and injured her.
Mr. and Mrs. Duplantis sued Pitre, Favalora, Sheriff Jerry Larpenter, and the sheriff's unnamed insurer,[3] alleging that the negligence of the two deputies was a cause of her injuries and that the sheriff was vicariously liable for the deputies' negligence and independently liable for failing to adequately train the deputies.[4] Pitre filed a motion for summary judgment, alleging that he was a co-employee of Mrs. Duplantis, and therefore, her exclusive remedy against him was in workers' compensation. Sheriff Larpenter also filed a motion for summary judgment, alleging he was not vicariously liable for Pitre's actions or inactions, because Pitre was working for Dillard's and was not in the course and scope of his employment with the TPSO at the time the incident occurred. The trial court granted both motions,[5] and Mr. and Mrs. Duplantis appealed.[6]
The only assignment of error is that the trial court erred in finding that the sheriff was not vicariously liable for the allegedly negligent acts of Pitre. Mr. and Mrs. Duplantis contend that Dillard's and the TPSO were dual employers of Pitre and, therefore, are solidarily liable for his negligence under Louisiana Civil Code article 2320. They also argue that Pitre was in the course and scope of his employment with the TPSO when the accident occurred.[7]

APPLICABLE LAW
The principle of vicarious liability is codified in Louisiana Civil Code article 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868, 871. This court, in interpreting the language, "in the exercise of the functions in which they are employed," has held that this language is the codal expression of the usual phrase, "in the course and scope of the employment." Romero v. Hogue, 77 So.2d 74, 79 (La.App. 1st Cir.1954). To establish vicarious liability for an employee's negligence pursuant to Article 2320, it must be shown that the employee's general activities at the time of the tort were within the course and scope of his employment. Cooper v. Reed, 02-0575 (La.App. 1st *679 Cir.2/14/03), 845 So.2d 411, 2003 WL 343209. While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996.
For an employer to be vicariously liable for the tortious acts of its employee, the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest. LeBrane v. Lewis, 292 So.2d 216, 217-18 (La.1974); Baumeister, 673 So.2d at 996. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective. Baumeister, 673 So.2d at 996. Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226-27. Stated another way, the court must examine whether the tortious act: (1) was primarily employment rooted; (2) was reasonably incidental to the employee's duties; (3) occurred on the employer's premises; and (4) occurred during the hours of employment. LeBrane, 292 So.2d at 218. It is not necessary that each of these factors be present in each case, and each case must be decided on its own merits. However, at a minimum, at least one of these factors must be present for the employer's liability to attach. Maze v. Grogan, 94-501 (La.App. 1st Cir.5/9/97), 694 So.2d 1168, 1170. Factual circumstances to consider are the payment of wages by the employer; the employer's power of control; the employee's duty to perform the particular act; the time, place, and purpose of the act in relation to serving the employer; the relationship between the employee's act and the employer's business; the benefits received by the employer from the act; and the reasonable expectation of the employer that the employee would perform the act. Orgeron, 639 So.2d at 227; Billiot v. Terrebonne Parish Sheriff's Office, 98-0246 (La.App. 1st Cir.2/19/99), 735 So.2d 17, 25, writ denied, 99-1376 (La.7/2/99), 747 So.2d 22.
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. West v. Clarendon Nat'l Ins. Co., 99-1687 (La. App. 1st Cir.7/31/00), 767 So.2d 877, 879. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Johnson v. Evan Hall Sugar Coop., Inc., 01-2956 (La.App. 1st Cir.12/30/02), 836 So.2d 484, 486. On a motion for summary judgment, if the moving party will not bear the burden of proof at trial on the matter before the court on the motion, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If *680 the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. LSA-C.C.P. art. 966(C)(2); McGee v. State ex rel. DOTD, 00-2706 (La.App. 1st Cir.3/28/02), 813 So.2d 625, 628.

ANALYSIS
In its oral reasons for judgment, the trial court explained in great detail its decision that the sheriff was not vicariously liable for Pitre's alleged negligence. The court noted that there were no issues of material fact concerning the fact that Pitre, although an employee of the TPSO, was working a "side detail" at Dillard's at the time of the incident and was, therefore, "an employee of Dillard's for all practical purposes." As summarized by the trial court, the evidence showed that Dillard's paid Pitre, had a personnel file for him, withheld taxes from his paycheck, and issued W-2's concerning his pay. Dillard's required each deputy hired as a security guard to complete an employment application, to participate in an orientation meeting, and to review and sign a copy of its policies and procedures concerning a security guard's duties. Dillard's supervised the deputies, including designating the methods to be used for dealing with suspected shoplifters, the place where apprehension could be made, the circumstances under which handcuffs were to be used, and the area where shoplifting suspects were to be taken after being apprehended. We find no dispute as to these factual findings and note also that the events that caused Mrs. Duplantis's injuries occurred on Dillard's premises while Pitre was under Dillard's supervision only and was not on duty for the TPSO.
However, the trial court went beyond these factors, which simply emphasized Pitre's status as a Dillard's employee, to focus on whether Pitre's specific duties and actions in this situation were rooted in his law enforcement function as a TPSO deputy or whether they were actions that could also have been performed by any other Dillard's employee by virtue of that employment relationship. There is no dispute that Dillard's hired TPSO deputies as security guards because they had training in law enforcement; the deputies also wore uniforms provided by the TPSO while working at Dillard's.[8] However, as noted by the trial court, there are statutes giving merchants and their employees the right to apprehend and detain shoplifting suspects, a law-enforcement function usually reserved for officers of the law. The court stated:
Article 215 of the Code of Criminal Procedure deals with the detention and the arrest of shoplifters. And our legislatures... have created a legal fiction, because basically under criminal law a private citizen does not have the right to arrest somebody on a misdemeanor crime. A private citizen can, if he sees a crime being committed, arrest on a felony. So what the legislature has done on the shoplifting statutes, merchants can designate certain agents, employees, to use reasonable force to detain individuals for questioning.

* * *
[W]hat we have is a statutory scheme where non-law-enforcement officers are allowed to perform functions that would otherwise be traditionally performed by *681 law-enforcement officers.... What the statutory scheme under Article 215 says is that the merchant or his employee may detain a person for arrest by a police officer, and the last paragraph of (A)(1) states that the detention shall not constitute an arrest.

* * *
[T]his is in the nature of a privilege that has been granted to merchants in order to protect their property and to deal with these circumstances.... Article 218.1 states that when a person has been arrested or detained in connection with the investigation or commission of any offense, he shall be fully advised of the reason for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel, and if indigent, his right to court-appointed counsel.

* * *
So what we have is whether it's a lawenforcement officer who is working for a merchant or if it's a merchant's employees who have been designated to detain shoplifters[, t]hey are both allowed to perform basically the same functions. The Code also provides that once somebody is detained for arrest that that person will be turned over to a lawenforcement officer as soon as possible. And that's Articles 226 and then 228[in] the Code of Criminal Procedure.

* * *
The functions [Pitre] was conducting, at that time, although they may be those that are traditionally carried out by a law-enforcement officer, those functions within the shoplifting and detention of [shoplifters] context, are not exclusively relegated to a police officer.

* * *
The fact that Dillard's had hired a lawenforcement officer to do this, the Court does not feel renders the sheriff's office liable since this was within the traditional functions and duties that were being performed by Dillard's employees with respect to shoplifters.
We find no fault with this analysis. While the detention and investigation of misdemeanor theft is "reasonably incidental to" the duties of a law enforcement officer, in the context of this case, these same acts are also "reasonably incidental to" the duties of a merchant's employee. Pitre's actions in this instance were not exclusively related to his status as a law enforcement officer, but were also functions of his status as a Dillard's employee. Additional factors to consider are that the TPSO derived no real benefit from Pitre's employment with Dillard's, nor did the TPSO require him or any other deputy to work on his own time as a security guard for Dillard's. Pitre was not acting within the ambit of any duties assigned to him by the TPSO, nor were his activities as an offduty security guard controlled by the TPSO. The TPSO's only involvement was that it told its deputies the Dillard's detail was available to them and it provided Dillard's with a schedule for those deputies who had applied and been accepted as Dillard's security guards, showing when those deputies would be available for the off-duty detail. Therefore, we conclude that the law and the evidence fully support the trial court's conclusion that the sheriff was not vicariously liable for any alleged negligence of Pitre.[9]
*682 In support of their "dual employer" argument, Mr. and Mrs. Duplantis rely on the case of Blair v. Tynes, 621 So.2d 591 (La.1993). There the sheriff's office was found vicariously liable for the negligence of its deputies in directing traffic at a private fundraising activity and the private employer was also found independently negligent and vicariously liable. However, that case involved an activitytraffic regulationover which, as the court noted, "[t]he legislature has given law enforcement officers the exclusive power...." Blair, 621 So.2d at 596. Also, the court in Blair did not address the issue of whether the deputies were off-duty at the time and whether they were within the course and scope of their employment with the sheriff's office when the accident occurred. Rather, after finding the sheriff's office had a statutorily-imposed duty to the pedestrian plaintiff, the court went on to find that the private employer was also vicariously liable as the special employer of the deputies. It was in that context that the "dual employment" solidary liability was imposed. We do not agree that the Blair case governs the situation we are addressing, because the job being performed by Pitre for Dillard's in this case was not one that only a trained sheriff's deputy could perform, nor was it an exclusive law-enforcement function. Rather, it was a function that any designated Dillard's employee could perform, and it was as a Dillard's employee that Pitre was engaged in this function. Therefore, we conclude that this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Mr. and Mrs. Duplantis.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The petition incorrectly designated this defendant as Dillard Department Store; the correct name is Dillard's Department Store, Inc.
[3] A supplemental and amending petition named Coregis Insurance Company as the sheriff's insurer.
[4] The petition also named as defendants Brandon Washington, Dillard's, and its unnamed insurer. A supplemental and amending petition named Dillard's insurer as Liberty Mutual Insurance Company. Mr. and Mrs. Duplantis eventually dismissed all their tort claims and settled their workers' compensation claims against Dillard's and Liberty Mutual.
[5] The judgment dismissing the claims against Sheriff Larpenter was limited to the vicarious liability claims based on Pitre's alleged negligence. Claims that the sheriff also had vicarious liability based on Favalora's alleged negligence were specifically not included in the judgment and remain in effect.
[6] Mr. and Mrs. Duplantis initially filed an application for a supervisory writ. This court denied the writ, remanded the matter, and ordered the trial court to treat the notice of intent to apply for a writ as a motion for appeal. Duplantis v. Dillard Dep't Store, 01-2019 (La.App. 1st Cir.10/22/01)(unpublished writ action).
[7] In its ruling on Pitre's motion for summary judgment, the trial court found that he was an employee of Dillard's at the time of the accident. Based on that finding, he was a coemployee with Mrs. Duplantis, and her remedy against him was limited to workers' compensation. Mr. and Mrs. Duplantis did not assign error to the dismissal of their tort claims against Pitre.
[8] Pitre testified in his deposition that he and the other deputies who worked as security guards paid the TPSO one dollar for every hour worked as reimbursement for using its uniforms on the Dillard's detail.
[9] In affirming this judgment, we note also that the facts of this case distinguish it from this court's decision in Cheatham v. Lee, 277 So.2d 513 (La.App. 1st Cir.), writ denied, 279 So.2d 696 (La.1973), in which a municipality was found vicariously liable for a battery committed by an off-duty policeman working a private security detail. In that case, the private employer exercised no control over the officer and had no policies or procedures governing his activities. The officer cleared his employment with his supervisor on the police force and considered that "he had the power and authority of a fully authorized city policeman" in using his "slap jack" to break up an altercation. Cheatham, 277 So.2d at 516. His actions were strictly those of a law enforcement officer and could not have been performed legally by a private citizen.