9 So.3d 881 (2009)
NATIONAL INTERSTATE INSURANCE COMPANY
v.
Loyette COLLINS, et al.
No. 2008 CA 0693.
Court of Appeal of Louisiana, First Circuit.
February 13, 2009.
Rehearing Granted May 5, 2009.
*882 Douglas K. Williams, Lervette J. Blair, Scott N. Hersgens, Baton Rouge, LA, for Plaintiff/Appellee, National Interstate Insurance Company.
Kirk A. Williams, Baker, LA and Vincent J. DeSalvo, Baton Rouge, LA, for Defendants/Appellants, Donna Plain, Individually and as Natural Tutrix of the Minor Children, Dandre Turner, Antonio Turner, Justin Turner and Erica Turner; Mycatosh Graham, Individually and as Natural Tutrix of the Minor Child, Christopher Carter; Barbara Godchaux, Individually and as Natural Tutrix of the Minor Children, Christian Godchaux and Michael Taylor; Carolyn Johnson, Individually and as Natural Tutrix of the Minor Children, Antonio Johnson and Kyla Johnson; Ashley Johnson; Kathleen Cage; Attlah Darensbourg; Janice Carter, Individually and as Natural Tutrix of her Minor Grandchildren, Jason Carter, Asher Smith, and Samantha Parker; Johnny Carter; Reginald Hamilton; Linda Omuemu, Individually and as Natural Tutrix of the Minor Child, Raven Omuemu; Shawn DuPree, Individually and as Natural Tutor of the Minor Children, Jessika DuPree, Shasnzee DuPree, and Shawn DuPree; Gwen DuPree; Kathleen Gabe; Wanda Jackson; Tinnen Uolightfrotxos; Loyette Collins; Individually and as Natural Tutrix of the Minor Children, Lahairoi Collins, Leal Collins, David Collins, and Leah Collins; D. Coleman, Individually and as Natural Tutor/Tutrix of the Minor Child, Qshailya George; Samuel Edo, Individually and as Natural Tutor of the Minor Children, Stacy Edo, Shanice Edo, Shondell Edo, and Shamuel Edo; Inez Davis, Individually and as Natural Tutrix of the Minor Child, Tatiana Jackson; and Earlene Johnson, Individually and on Behalf of her Minor Child, Amber Johnson.
Before WHIPPLE, GUIDRY, PETTIGREW, McDONALD and HUGHES, JJ.
*883 PETTIGREW, J.
Defendants in concursus appeal a district court judgment granting National Interstate Insurance Company's Motion to Dismiss and denying their Motion for Summary Judgment. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
This litigation arises out of a motor vehicle accident occurring on or about July 30, 2005, near Doddrige, Arkansas. On that date, Cynthia Bourgeois, a bus driver for American International Travel, Inc. d/b/a Dixieland Tours and Cruises ("Dixieland"), was traveling northbound on U.S. Highway 71 when a vehicle driven by Douglas Vanderbilt of Texarkana, Arkansas crossed the center line of the highway and collided head-on with Dixieland's bus. Defendants in concursus ("defendants") were all passengers on the bus. Defendants and Ms. Bourgeois allegedly sustained injuries as a result of the accident.
National Interstate Insurance Company ("National Interstate") provided a commercial automobile liability insurance policy in favor of Dixieland, which provided $5,000,000.00 per occurrence in liability coverage. National Interstate contends that Norman Augusta, Dixieland's Chief Executive Officer and Chairman, completed and signed an uninsured/underinsured ("UM") waiver form prescribed by the Louisiana Commissioner of Insurance, selecting and initialing Coverage Option 2, to reject UM coverage at the same limits as the liability coverage set forth in the policy held by National Interstate. As such, Mr. Augusta filled in the selected amount of UM coverage for each person and each accident. He specifically entered $25,000.00 for each person and $50,000.00 for each accident as the desired amount. National Interstate contends that in further completion of the form, Mr. Augusta then printed and signed his name on the waiver form as the legal representative of Dixieland. The policy number, YPP XXXXXXX-XX, was entered on the form. Lastly, the form was dated.
Many of the injured bus passengers made demand upon and/or filed suit against National Interstate.[1] As such, National Interstate filed a Petition For Concursus in the 19th Judicial District Court naming as defendants all of the bus passengers who had filed suit against it in that court.[2] National Interstate admitted that it owed the proceeds under its policy, but was faced with competing claims for those proceeds. National Interstate asserted that the total amount of UM coverage available for this accident is $50,000.00 and asked that the district court allow it to deposit that amount into the registry of the court and for an order requiring the defendants in concursus to assert their respective claims to these funds contradictorily against each other. On August 4, 2006, the district court signed an order allowing National Interstate to deposit $50,000.00 into the registry of the court.
On September 10, 2007, National Interstate filed a Motion to Dismiss in the concursus proceeding, requesting that it be dismissed and discharged from further obligation or liability as administrator of the policy at issue and from any other liability to defendants. In opposition to National Interstate's motion, defendants filed a Motion for Summary Judgment seeking a determination *884 that the UM waiver form executed by Dixieland was invalid, thereby establishing UM coverage in an amount equal to the liability limits of $5,000,000.00. Defendants asserted that the UM waiver form was invalid because Norman Augusta did not indicate that he was signing in a representative capacity for Dixieland and because the name of the insured company, Dixieland, was not noted on the form.
Ms. Bourgeois filed an opposition to National Interstate's Motion to Dismiss in federal court in Arkansas and in the concursus proceeding.[3]
On November 26, 2007, National Interstate's Motion to Dismiss and defendants' Motion for Summary Judgment came for hearing in the state court concursus action. The district court granted National Interstate's Motion to Dismiss and denied defendants' Motion for Summary Judgment, finding that the UM waiver at issue is valid as a matter of law. The district court certified the December 5, 2007 judgment as a final judgment pursuant to La.Code Civ. P. art. 1915, finding there is no just reason for delay.[4] Defendants appealed.

ISSUE PRESENTED FOR REVIEW
In connection with this appeal, there is only one issue for review and consideration: *885 (1) whether the trial court erred as a matter of law in finding that the UM waiver form at issue was valid, notwithstanding that the insured company name did not appear anywhere on the form and the legal representative for the insured company did not state that he was signing the waiver in a representative capacity.

LAW AND DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. Duncan, 2006-363 at p. 3, 950 So.2d at 546. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish those ends. La.Code Civ. P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Duplantis v. Dillard's Dept. Store, XXXX-XXXX, p. 5 (La. App. 1st Cir.5/9/03), 849 So.2d 675, 679, writ denied, XXXX-XXXX (La.10/10/03), 855 So.2d 350. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987); A.I.U. Ins. Co. v. Roberts, 404 So.2d 948, 949 (La.1981). The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor not covered by adequate liability insurance. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La. 1992); Henson v. Safeco Ins. Companies, 585 So.2d 534, 537 (La.1991); Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982).
UM coverage is determined not only by contractual provisions, but also by applicable statutes. Duncan, 2006-363 at p. 4, 950 So.2d at 547. Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy/even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Id.
The UM statute is to be liberally construed and a rejection of the coverage provided by law must be clear and unmistakable. Roger, 513 So.2d at 1130. The insurer bears the burden of proof that a rejection of coverage or a selection of lower limits has been legally perfected.[5], [6]
*886 In this appeal, defendants assert that the UM waiver form was ineffective because Norman Augusta signed the waiver form, individually, and without any statement as to his representative capacity in relation to the corporate insured. Moreover, the corporate insured is not identified anywhere on the form. In support of their argument that the waiver form executed in this case was invalid, defendants rely upon Duncan, a recent statement by the Louisiana Supreme Court concerning the requirements necessary to the validity of a UM waiver. Defendants also rely upon our decision in Cohn v. State Farm Mut. Auto. Ins. Co., 2003-2820 (La.App. 1st Cir.2/11/05), 895 So.2d 600, writ denied, XXXX-XXXX (La.6/17/05), 904 So.2d 705, which predates Duncan, and on Perry v. American Home Assurance Co., XXXX-XXXX (La.App. 1st Cir.6/8/07), 958 So.2d 1216 (unpublished), which postdates Duncan.
In Duncan, the supreme court specifically held that a UM waiver form that failed to contain the policy number on the designated line was invalid. In closely examining the waiver form promulgated by the Commissioner of Insurance, the supreme court found that the prescribed form requires six tasks, all pertinent in rejecting UM coverage, as follows: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date. Duncan, 2006-363 at pp. 11-12, 950 So.2d at 551.
In Duncan, the supreme court cited with approval our decision in Cohn, 2003-2820 at p. 5, 895 So.2d at 602. Duncan, 2006-362 at p. 14, 950 So.2d at 553. The UM waiver form at issue in Cohn was missing a complete policy number and the name of the insurance company, and the insured company representative failed to indicate that she was signing in a representative capacity.[7] We held, citing Roger v. Estate of Moulton, 513 So.2d 1126, 1131 (La.1987), that "[t]he expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of *887 law." Cohn, 2003-2820 at p. 4, 895 So.2d at 602.
Herein, National Interstate seeks to distinguish Cohn by emphasizing that several pieces of information were missing from that form. Also, National Interstate argues that defendants inappropriately place emphasis on guidelines published in bulletins issued by the Commissioner of Insurance, which are advisory only. National Interstate argues that the majority in Duncan made no mention of these bulletins, much less took the position that these bulletins are the law in Louisiana.
Likewise, National Interstate seeks to distinguish this Court's unpublished opinion in Perry, where we invalidated UM waiver forms. The UM waiver forms in Perry were missing the date on one form, the insured's printed name on the other form, and the policy number on two different forms. The forms also contained blank lines for the insured company name. Again, National Interstate points out that the forms in Perry were missing several pieces of pertinent information.
Recently, our brethren in the Fifth Circuit Court of Appeal addressed the validity of a UM waiver form in which Raymond Johnson signed his name without indicating that he was signing in his capacity as legal representative of the company. Johnson v. Folse, XXXX-XXXX, XXXX-XXXX & XXXX-XXXX (La.App. 5th Cir.5/27/08), 986 So.2d 110, writ denied, XXXX-XXXX (La.9/26/08), 992 So.2d 991. Raymond Johnson also failed to print his name or the policy number in the blanks provided on the form.[8] The fifth circuit held that because Raymond Johnson signed his name without indicating that he was signing in his capacity as legal representative of the company, and because he left blank the printed name of the insured or legal representative in the space above the signature line, the form was ambiguous.
Pertinent to the supreme court's opinion in Duncan, our opinions in Cohn and Perry, and the fifth circuit's opinion in Johnson was the fact that the rejections of UM coverage were not clear and unmistakable, and thereby did not entitle the insurers to a rebuttable presumption that the insureds knowingly rejected UM coverage. Duncan held that compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. Duncan, 2006-363 at p. 14, 950 So.2d at 553.[9]
Because we find the signatory's capacity is uncertain on the face of the form, we hold that the waiver is deficient and UM coverage is afforded under the policy equal to the liability coverage set forth in the policy. Accordingly, the judgment of the trial court granting National Interstate's Motion to Dismiss and denying defendants' Motion for Summary Judgment is reversed. Costs of this appeal are assessed to National Interstate Insurance Company.
REVERSED.
*888 McDONALD, J., dissents and assigns reasons.
GUIDRY, J., concurs.
McDONALD, J., dissenting:
I respectfully dissent from the majority in this matter. The issue presented in this appeal is whether a UM waiver form signed by a legal representative of the named insured is "properly completed" by the "legal representative" of the "named insured" if the signature does not include the representative capacity of the signatory (or if the face of the form does not have an affirmative statement indicating that the signatory is signing on behalf of the named insured). The report concludes that a signature/form lacking such designation creates uncertainty on the face of the UM waiver form and is not a valid waiver of UM coverage in the amount of the policy's bodily injury limits. I disagree with this conclusion.
La. R.S. 22:680 does not set out the manner in which a legal representative must perfect his signature. The latest Supreme Court decision concerning what constitutes a "properly completed and signed form" pursuant to La. R.S. 22:680 is Duncan. In determining what is required under the statute to constitute a "properly completed and signed" form, Duncan examined the prescribed form and determined that the blanks on the form entail six tasks, all of which are pertinent to a valid UM waiver. In essence, the Supreme Court concluded that the statute requires the completion of all six tasks in order for an insurer to be entitled to the rebuttable presumption provided in La. R.S. 22:680(1)(a)(ii).
The specific task examined in Duncan was "filling in the policy number" and Duncan held "the failure to fill in the policy number on the form prescribed by the commissioner of insurance invalidates the UM waiver." Duncan's holding does not address the task at issue here  "printing the name of the named insured or legal representative" and "signing the name of the named insured or legal representative". However, the Supreme Court provided some discussion on the relevance of the six tasks in the context of how completing these tasks establishes evidence of a knowing waiver of UM coverage. This dicta provides guidance in this matter. The Supreme Court stated:
The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or legal representative signs the form evidencing the intent to waiver UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to determination of whether the insured waived UM coverage for the particular policy at issue.
In exercising his authority under La. R.S. 22:680 to prescribe the UM waiver form, the Commissioner included a notice immediately above the signature, policy number, printed name of signatory and date lines. The notice states "[t]he choice I made by my initials on this form will apply to all persons insured under my policy". By signing the form, printing his name, filling in the policy number and *889 dating the waiver form, a signatory  whether it is the named insured or its/his legal representative  clearly indicates that he intends for the selection he initialed to apply to the policy identified by the policy number. Had the Commissioner determined that to effectuate a valid UM waiver the insured's legal representative must include a designation that the signature was made in a representative capacity, the Commissioner would have included that requirement as an additional task on the prescribed form. The Commissioner did not do so. The only additional task the Supreme Court identified that the Commissioner requires from the signatory, in the signature portion of the waiver form, is for the signatory to print his name, date the form, and to include the number of the policy. By submitting a UM waiver form that addressed each required task, Dixieland met its burden and established that it is entitled to the rebuttable presumption "that the insured knowingly . . . selected a lower limit".
The facts in this case clearly demonstrate the inequity resulting from legislation that allows a commercial bus tour company, such as Dixieland, that services many guest passengers during a trip, to have a commercial automobile policy with a limit of $5,000,000.00 per accident in bodily injury liability coverage, but to select only $50,000.00 in UM coverage. However, the Legislature has enacted legislation that allows an insured to do so. The report attempts to fix this legislatively created inequity by imposing a task on the signatory that is not required by the Legislature, the Commissioner, or the Supreme Court.
The record before the court reveals that National Interstate submitted a UM waiver, prescribed by the Commissioner of Insurance, that addresses each of the six required tasks identified in Duncan. Accordingly, National Interstate is entitled to a rebuttable presumption that Dixieland knowingly selected lower limits. The defendants did not produce any evidence that Norman Augusta was not the legal representative of Dixieland, that the policy number shown on the UM waiver is not for the policy at issue in this matter, or that the UM waiver was altered or modified after Norman Augusta completed it. In addition to establishing that it was entitled to the rebuttable presumption, National Interstate also submitted the affidavit of Norman Augusta, attesting to his position as Dixieland's Chief Executive Officer and Chairman since 1995 and that he completed the blanks on the UM waiver form. Mr. Augusta states that it was his intention to do exactly what he did when he completed the waiver form. He intended to choose a lower limit of $50,000.00 in UM coverage and that is what he did. There is no dispute over his intentions in this regard. Thus, National Interstate has shown that there are no genuine issues of material fact that Dixieland rejected UM coverage in the amount of the policy limits for bodily injury liability coverage and selected lower limits for UM coverage, and that it is entitled to summary judgment as a matter of law.
For these reasons I respectfully dissent and would affirm the judgment of the trial court.
NOTES
[1] Cynthia Bourgeois, the bus driver, filed suit in federal district court in Arkansas, whereas the bus passengers instituted several suits in the 19th Judicial District Court for the Parish of East Baton Rouge.
[2] Subsequently, National Interstate amended its Petition for Concursus to add Cynthia Bourgeois as a defendant.
[3] Ms. Bourgeois also filed in federal district court a Motion for Summary Judgment, which contained, in essence, alternative motions, as follows: (1) a Motion to Declare Insurance Coverage and Limits of National Interstate Insurance Company in Favor of Plaintiff and (2) a Motion for Stay/Injunction of the Parallel State Court Proceedings. Ms. Bourgeois requested that the federal court interpret National Interstate's policy of insurance under Arkansas law rather than Louisiana law, to reject the UM waiver as invalid, and to stay the state concursus action. The Honorable Harry F. Barnes, U.S.D.C. for the Western District of Arkansas, rendered a Memorandum Opinion and Order dated November 8, 2007, on the Motion for Summary Judgment filed by Ms. Bourgeois in that action. After conducting a choice-of-law analysis, Judge Barnes determined that Louisiana law should apply to interpret the policy of insurance at issue. Judge Barnes agreed with National Interstate that the UM waiver form complied with the UM form promulgated by the Louisiana Commissioner of Insurance and the requirements set forth by the Louisiana Supreme Court in Duncan v. U.S.A.A. Ins. Co., 2006-363 (La. 11/29/06), 950 So.2d 544. As such, the court determined that UM coverage in the amount of $50,000.00 was applicable to the case. Thereafter, Ms. Bourgeois entered into a Consent Judgment with National Interstate in lieu of proceeding with the hearing on National Interstate's Motion to Dismiss in state court. The Consent Judgment provided in pertinent part, that the claims of Ms. Bourgeois are dismissed, with prejudice, against National Interstate and that National Interstate is relieved of any further obligation and liability as administrator of Policy No. YPP-1368460-03 and from any further responsibilities, duties, or liabilities to Ms. Bourgeois, and allowed Ms. Bourgeois to withdraw, in an amount to be determined by the district court, from the policy proceeds deposited into the registry of the court by National Interstate.
[4] The record does not contain oral or written reasons for the district court's determination that there was no just reason for delay. On de novo review of the matter, we note that the December 5, 2007 judgment determined the main issue in this matter (i.e. the validity of the UM waiver form). The denial of a motion for summary judgment is interlocutory and, therefore, not appealable as a final judgment. See Young v. City of Plaquemine, 2004-2305 (La.App. 1st Cir.11/4/05), 927 So.2d 408. However, because the merits of the motion are subsumed in the district court's ruling, which also grants the insurer's Motion to Dismiss and releases it from the litigation, our review necessarily encompasses the arguments made in defendants' motion for summary judgment. Since the issue of the validity of the UM waiver is the subject of both the Motion for Summary Judgment and the defense raised to the Motion to Dismiss, we find that the certification of the December 5, 2007 judgment was proper. See R.J. Messinger, Inc. v. Rosenblum, XXXX-XXXX, pp. 13-14 (La.3/2/05), 894 So.2d 1113, 1122-1123.
[5] Louisiana Revised Statutes 22:680(1)(a)(ii), in effect at the time the waiver at issue was signed, reads:

Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
[6] In support of its burden of proof, National Interstate introduced into evidence the UM waiver form at issue along with an affidavit by Norman Augusta to the effect that as Chief Executive Officer and Chairman for American International Travel, Inc., d/b/a Dixieland Tours, he was empowered to and did execute the waiver form and knowingly selected UM coverage in an amount lower than the liability limits of the policy.
[7] After this UM form was executed, the insurance agent sent the form to State Farm. State Farm unilaterally amended the waiver by writing "Beebe's Pest and Termite Control, Inc." over Annette Beebe's name and checking off the box for State Farm Mutual Automobile Insurance Company. Cohn, 2003-2820 at pp. 4-5, 895 So.2d at 602.
[8] In a writ disposition, the fifth circuit found that the blank line for the policy number was not a fatal defect, because the policy number was pre-printed on the form, citing Carter v. State Farm Mutual Automobile Insurance Co., XXXX-XXXX (La.10/5/07), 964 So.2d 375. Johnson, XXXX-XXXX at p. 13 n. 3, 986 So.2d at 118 n. 3.
[9] We note that we are not bound by the federal district court's judge's interpretation of Louisiana law and ruling concerning the validity of the UM waiver form. Ms. Bourgeois voluntarily acquiesced in that ruling by not appealing it and by additionally entering into a consent judgment with National Interstate in the state court concursus proceeding.